1

2

3

4

5

6

7

8                            **UNITED STATES DISTRICT COURT**

9                            **CENTRAL DISTRICT OF CALIFORNIA**

10

11   JOHN P. KENNEY,                    )    NO. SACV 05-426-MAN
                                        )
12                    Plaintiff,        )
                                        )
13        v.                            )    MEMORANDUM OPINION AND ORDER
                                        )
14   JO ANNE B. BARNHART,               )
     Commissioner of Social Security,   )
15                                      )
                      Defendant.        )
16   _____)

17

18        On May 5, 2005, Plaintiff filed a Complaint naming the Commissioner

19   of the Social Security Administration ("SSA") as the sole defendant.

20   The Complaint pleads that subject-matter jurisdiction arises under 42

21   U.S.C. § 405(g) and, pursuant to that statute, "review" is sought of a

22   decision rendered by an Administrative Law Judge of the SSA, dated

23   January 17, 2003.   On May 26, 2005, the parties filed a consent to

24   proceed before the undersigned United State Magistrate Judge for all

25   proceedings in this case, pursuant to 28 U.S.C. § 636(c).

26

27        On September 7, 2005, Defendant filed a motion to dismiss the

28   Complaint, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of

Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Motion").  On September 8, 2005, Defendant filed a Certified Administrative Record in support of the Motion ("A.R.").  On October 6, 2005, Plaintiff filed an opposition to the Motion, which he then re-filed on November 14, 2005, with exhibits appended to it ("Opposition").  On November 23, 2005, Defendant filed her Reply.

Briefing on the Motion is deemed completed.  For the reasons set forth below, the Court concludes that dismissal of this action is warranted and grants Defendant's Rule 12(b) Motion.[1]

### PLAINTIFF'S CLAIM AND BACKGROUND

It is difficult to ascertain the nature of Plaintiff's federal claim, as well as the factual underpinning for it, based solely on the barebones nature of the Complaint's allegations.  Having carefully reviewed these brief allegations in the light of Plaintiff's assertions and arguments set forth in his Opposition, as well as the A.R., the Court understands the claim Plaintiff intends to pursue by this action -- whether it is adequately alleged in the Complaint or not -- to be as follows[2]:

---

[1]    Because dismissal of this action is appropriate under Rule 12(b), and because neither party has complied with the requirements of Rule 56 and Local Rule 56-1 *et seq.*, the Court need not, and does not, reach the Rule 56 ground for the Motion.

[2]    For purposes of the Rule 12(b) Motion, the Court generally must consider the adequacy of the Complaint's allegations themselves. However, for purposes of determining whether leave to amend should be granted, the Court also has considered carefully Plaintiff's Opposition

1    Plaintiff received disability insurance benefits ("DIB") for a
2    "large portion" of his life, starting at age 19. (Opposition at 1; A.R.
3    14, 132.)  At some point, Plaintiff was able to work and engaged in
4    sporadic work activity.  (A.R. 14.)  In August 1994, the SSA sent
5    Plaintiff a notice advising him that, based on his reported earnings, he
6    no longer qualified for DIB.  (A.R. 132-37.)  In late 1994, the SSA
7    advised Plaintiff that he had been overpaid benefits in the amount of
8    $28,177.50 for the period April 1989, through November 1994. (A.R. 14,
9    144-47.)  Plaintiff did not appeal, request a waiver of the overpayment
10   assessment at that time, or make any repayment.

11

12   In 1998, after notice was sent to Plaintiff, the SSA referred the
13   overpayment debt to the Department of the Treasury for a tax refund
14   offset, pursuant to what is now called the Treasury Offset Program
15   ("TOP").  (A.R. 151.)  At some point, the overpayment debt was reported
16   to credit reporting agencies.  (A.R. 29.)  Pursuant to a TOP offset
17   effected in 1999, the overpayment debt was reduced by close to $4,000.
18   (*Id.*; Opposition at 7.)

19

20   In November or December 2000, Plaintiff entered into a repayment
21   agreement with the SSA, by which he agreed to make monthly payments of
22   $350.  He made his first monthly payment in January 2001, and continued
23   to make payments thereafter.  However, despite these payments, the
24   records of two consumer reporting agencies intermittently continued to
25

26   and the A.R., to determine whether, notwithstanding the deficiencies in
     the Complaint which render it subject to dismissal, this action should
27   continue.  For purposes of argument only, the Court has treated the
     various unsworn assertions set forth in the Opposition as true, except
28   to the extent that they are indisputably contradicted by the record.

3

indicate during 2001 that: the overpayment debt had been "charged off" (Equifax); and Plaintiff's account with the SSA was in collection (TransUnion). These reports were inaccurate and interfered with Plaintiff's ability to obtain financing needed to complete a real estate project he had commenced. (Complaint at 2; Opposition at 5; A.R. 26-29.) Petitioner hired an attorney to resolve this situation and spent $12,000 on attorney's fees. (Complaint at 2; Opposition at 5; A.R. 26-30.) Petitioner also enlisted the assistance of the Office of then-Congressman Christopher Cox, which contacted the SSA about Plaintiff's situation in June 2001. (Complaint at 2; A.R. 25.) The SSA responded to the inquiry, advising that, while no further TOP offsets would occur, the SSA could not remove the overpayment debt from Plaintiff's credit report, as it still was owed. (A.R. 24.) Plaintiff alleges that the SSA's "inappropriate illegal reporting of credit information" occurred from January 2001, through November 2001. (Opposition at 6.)

In October 2001, Plaintiff applied for a waiver of the overpayment. (A.R. 31-38.) The SSA denied his request initially and after meeting with him. (A.R. 39-45.) Plaintiff requested a hearing before an Administrative Law Judge. (A.R. 46.) On October 16, 2002, a hearing was held before Administrative Law Judge Charles E. Stevenson, Jr. ("ALJ"), at which Plaintiff appeared and testified. (A.R. 158-71.) On January 17, 2003, the ALJ issued a written decision. (A.R. 13-18, the "ALJ Decision.")

The ALJ concluded that the SSA's recovery of the overpayment to Plaintiff could not be waived, because Plaintiff was not "without fault" within the meaning of 20 C.F.R. § 404.507. (A.R. 16-17.) The ALJ

4

observed that the overpayment determination by the SSA had become final and binding due to Plaintiff's failure to appeal, but could be reopened to correct error.  The ALJ then concluded that "error" had occurred, which warranted reviewing the amount and time period of the overpayment debt previously determined by the SSA; that debt had been calculated as running from April 1989, through November 1994, for a total amount of $28,177.50.  (A.R. 14-15.)

The ALJ's determination of "error" rested on Plaintiff's October 1991 application for supplemental security income ("SSI") benefits. Pursuant to that application, the SSA found Plaintiff to be disabled and began paying him SSI.  Plaintiff did not have any earnings during 1991 and 1992.  (A.R. 15.)  The ALJ concluded that, based on the SSA's disability finding, Plaintiff had been entitled to a new period of DIB as of October 1991, without a waiting period, as he previously had been entitled to DIB within five years of the month in which he again became disabled.  (*Id.*)  Accordingly, the ALJ deemed the October 1991 application to be a constructive filing for DIB for a subsequent period of entitlement and directed another department of the SSA to "determine, based on [Plaintiff's] work activity, when this subsequent period of entitlement ended, and [for] which months, if any, he received benefits to which he was not entitled."  (A.R. 15-17.)

The ALJ further determined that "[t]he overpayment determination regarding the period April 1989 through September 1991 is not disturbed," and the amount of overpayment to Plaintiff for this time period was $11,689.50.  (A.R. 16.)  In short, the ALJ's finding that Plaintiff was entitled to receive a new period of DIB, rather than SSI,

based on his October 1991 application, effectively resulted in a reduction of the total amount of his overpayment debt. However, the ALJ expressly determined that Plaintiff had been overpaid DIB for a fixed period and amount, recovery of which was not waived. (A.R. 18.)

Finally, the ALJ noted that Plaintiff, in his testimony, raised the issue of the reporting of his overpayment debt to credit reporting agencies, complaining that this: damaged his credit rating; precluded him from obtaining necessary financing to complete a real estate development transaction at a loss of $200,000; and caused him to incur $12,000 in legal fees. Noting that Plaintiff "now claims damages against [the] SSA," the ALJ concluded "that is an issue not before the undersigned for decision." (A.R. 17.)

Plaintiff requested review of the ALJ Decision by the Appeals Council. (A.R. 9.) He sent a letter to the Appeals Council asserting that his damages resulting from the reporting of the overpayment debt to credit reporting agencies during 2001 now exceeded five million dollars and could be closer to seven million dollars. Plaintiff alleged that the credit reporting destroyed his credit rating and his business, and had reduced him to poverty. (A.R. 154-56.) On March 10, 2005, the Appeals Council denied review. (A.R. 4-6.) With respect to Plaintiff's complaint about the reporting of his overpayment debt, the Appeals Council stated:

> The manner of collection of an overpayment by the Social Security Administration is not an initial determination under 20 CFR 404.903 and thus is not subject to the administrative

1    and judicial appeal processes. Thus, neither the
2    Administrative Law Judge nor the Appeals Council has the
3    authority to address matters concerning your credit rating,
4    etc. based on the effort undertaken by the Social Security
5    Administration to collect your overpayment.

7  (A.R. 5.)

9      By the Complaint, Plaintiff asks this Court to review the ALJ
10 Decision under 42 U.S.C. § 405(g). (Complaint at 1.) Plaintiff
11 expressly alleges that he has received from the SSA all monies owed him
12 as DIB as of December 7, 2004, noting that, once all was said and done,
13 the overpayment debt was "eradicated" and the SSA ended up owing, and
14 paying, him an additional $7,000. (Complaint at 2.)

16     Plaintiff alleges that the SSA's assessment of an overpayment debt
17 was "error,"[3] which was compounded by its failure to follow its internal
18 policies and guidelines as well as the law regarding the reporting of
19 the debt to consumer reporting agencies. (Complaint at 2, 4.)
20 Plaintiff alleges that the SSA's conduct violated his "civil rights" and
21 three federal statutes: the Privacy Act at 5 U.S.C. § 552a; the Fair
22 Credit Reporting Act at 15 U.S.C. § 1681; and the Fair Debt Collection

24        [3]    In his Opposition, Plaintiff makes clear that he is claiming
25 a retrospective error based on the ALJ's 2002 finding that the October
   1991 award of SSI should have been an award of DIB. Plaintiff reasons
26 that, had the SSA awarded him Title II DIB benefits rather than SSI in
   1991, then in late 1994, when the SSA found that an overpayment had
27 occurred based on Petitioner's prior period of DIB entitlement, the SSA
   could have commenced offsetting that overpayment debt on a monthly basis
28 against any DIB payments Plaintiff was receiving pursuant to the October
   1991 application. (Opposition at 6-7.)

Practices Act at 15 U.S.C. §§ 1691-92.  (Complaint at 2-3.)

The relief Plaintiff seeks in this action is an award of monetary damages based on the "false, improper and damaging credit reporting put forth by the SSA" during 2001.  (Complaint at 2.)  Plaintiff alleges that, based on the SSA's actions, his credit was damaged and has never recovered sufficiently so that he can earn a living as a real estate investor and developer.  He estimates that the damages he has sustained exceed five million dollars.  (*Id.*)  Plaintiff also seeks injunctive and declaratory relief "for the commission of illegal acts by the SSA," but does not specify the nature of the relief sought in this respect, *i.e.*, does not specify what SSA action he seeks to enjoin or what declaratory relief he needs.  (Complaint at 4.)

**DISCUSSION**

I.   <u>The Standards For Dismissal</u>

A.   <u>Rule 12(b)(1)</u>

As federal courts are courts of limited jurisdiction, a plaintiff has the burden to establish that his case is properly in federal court. <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994); <u>In re Ford Motor Co./Citibank (South Dakota) N.A.</u>, 264 F.3d 952, 957 (9th Cir. 2001); <u>Scott v. Breeland</u>, 792 F.2d 925, 927 (9th Cir. 1986).  This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the federal court to assert subject-matter jurisdiction over the action.  <u>McNutt v. Gen.</u>

8

1   <u>Motors Acceptance Corp.</u>, 298 U.S. 178, 189, 56 S. Ct. 780, 785 (1936).

2   In particular, a complaint does not satisfy the subject-matter

3   jurisdiction requirement if the claim either: does not "arise under"

4   the Federal Constitution, laws, or treaties, or fall within one of the

5   other enumerated categories of Art. III, § 2, or is not a "case or

6   controversy" within the meaning of the latter section; or the claim is

7   not one described by any jurisdictional statute. <u>Baker v. Carr</u>, 369

8   U.S. 186, 198, 82 S. Ct. 691, 700 (1962).

9

10     Rule 12(b)(1) provides that a complaint may be dismissed for lack

11   of subject-matter jurisdiction. "Rule 12(b)(1) jurisdictional attacks

12   can be either facial or factual." <u>White v. Lee</u>, 227 F.3d 1214, 1242

13   (9th Cir. 2000). A Rule 12(b)(1) motion is appropriate when a claim, on

14   its face, is barred by the sovereign immunity doctrine, as Defendant

15   contends here. Wright & Miller, 5B <u>Federal Practice & Procedure: Civil</u>

16   <u>3d</u>, § 1350 at 79 (2004). Additionally, a district court considering a

17   Rule 12(b)(1) motion may consider extrinsic evidence bearing on the

18   question of whether subject-matter jurisdiction exists. The existence

19   of disputed facts will not preclude dismissal under Rule 12(b)(1), for

20   the court may weigh that evidence and determine the facts pertinent to

21   the jurisdictional issue without converting the motion to one for

22   summary judgment. *See, e.g.,* <u>McLachlan v. Bell</u>, 261 F.3d 908, 909 (9th

23   Cir. 2001); <u>White</u>, 227 F.3d at 1242; <u>Roberts v. Corrothers</u>, 812 F.2d

24   1173, 1177 (9th Cir. 1987).

25

26       B.   <u>Rule 12(b)(6)</u>

27

28     The purpose of a motion under Rule 12(b)(6) of the Federal Rules of

Civil Procedure is to test the formal sufficiency of the statement of the claim for relief.  A complaint may be dismissed for failure to state a claim for two reasons:  (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't.</u>, 901 F.2d 696, 699 (9th Cir. 1990).  In determining whether a complaint states a claim, all allegations of material fact are accepted as true, "as well as all reasonable inferences to be drawn from them." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001); <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 338 (9th Cir. 1996)(the allegations must be construed in the light most favorable to the nonmoving party).  A complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); <u>Cahill</u>, 80 F.3d at 338.

On a Rule 12(b)(6) motion, the Court may look beyond the Complaint to undisputed facts subject to judicial notice, including matters of public record, and doing so does not convert the motion to one for summary judgment.  <u>Lee v. City of Los Angeles</u>, 350 F.3d 668, 689 (9th Cir. 2001); <u>Gemtel Corp. v. Community Redevelopment Agency</u>, 23 F.3d 1542, 1544 n.1 (9th Cir. 1994).

II.   <u>The Sovereign Immunity Doctrine And Jurisdiction In This Case</u>.

As a threshold matter, the Court must address Defendant's contention that the sovereign immunity doctrine applies to Plaintiff's

claim and precludes finding subject-matter jurisdiction in this case.

A.   The Sovereign Immunity Doctrine

It is beyond dispute that, as a sovereign, the United States is immune from suit without its prior consent, unless it has waived such immunity and consented to be sued. *See, e.g.,* <u>United States v. Dalm</u>, 484 U.S. 596, 608, 110 S. Ct. 1361, 1368 (1990); <u>United States v. Sherwood</u>, 312 U.S. 584, 586, 61 S. Ct. 767, 769-70 (1941); <u>United States v. Shaw</u>, 309 U.S. 495, 500-01, 60 S. Ct. 659, 661 (1940); <u>Gilbert v. DaGrossa</u>, 756 F.2d 1455, 1458 (9th Cir. 1985). Absent a waiver of sovereign immunity, a federal court lacks subject-matter jurisdiction over a claim against the United States, and dismissal is required. <u>Hutchinson v. United States</u>, 677 F.2d 1322, 1327 (9th Cir. 1982). A waiver of sovereign immunity cannot be implied; rather, it must be unequivocally expressed. <u>United States v. Mitchell</u>, 445 U.S. 535, 538, 100 S. Ct. 1349, 1351 (1980).

An action brought against a federal agency, such as the SSA, is effectively one brought against the United States. *See, e.g.,* <u>Dugan v. Rank</u>, 372 U.S. 609, 620, 83 S. Ct. 999, 1006 (1963); <u>Blackmar v. Guerre</u>, 342 U.S. 512, 514-5, 72 S. Ct. 410, 411 (1952). As an agency of the United States, the SSA possesses the same sovereign immunity as the United States; therefore, the SSA cannot be sued absent an express waiver of that immunity. <u>State of Neb. ex rel. Dep't. of Soc. Servs. v. Bentson</u>, 146 F.3d 676, 679 (9th Cir. 1998).

The sovereign immunity doctrine applies with equal force to suits

11

against a federal employee in his official capacity. "It has long been the rule that the bar of sovereign immunity cannot be avoided by naming officers and employees of the United States as employees." Gilbert, 756 F.2d at 1458. "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." State of Hawaii v. Gordon, 373 U.S. 57, 58, 83 S. Ct. 1052, 1053 (1963). "When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989). Plaintiff complains about actions taken by SSA employees in the course of their employment (whether such actions were appropriate or not), and not about any actions taken by the Commissioner or SSA employees in their respective personal capacities. Thus, the fact that Plaintiff has named the Commissioner as a defendant, rather than the United States, does not avoid application of the sovereign immunity doctrine.

B.   Section 405(g) Subject-Matter Jurisdiction

The Complaint expressly pleads that jurisdiction arises under 42 U.S.C. § 405(g) and that Plaintiff, by this action, seeks "review" of the ALJ Decision. (Complaint at 1.) Notwithstanding the sovereign immunity generally afforded the SSA, Congress, through Section 405(g), has authorized judicial review of, and thus federal court subject-matter jurisdiction over, certain decisions made by the Commissioner.

Section 405(g), by its terms, allows a federal court to review a

12

"final decision" of the SSA Commissioner made "after a hearing." Califano v. Sanders, 430 U.S. 99, 108, 97 S. Ct. 980, 986 (1977)("This provision clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing'.")  The terms of the statute limit the power of the reviewing federal court to "affirming, modifying, or reversing the decision of the Commissioner." Hence, Section 405(g) affords a claimant an avenue, in federal court, by which he or she may challenge an adverse ruling by the Commissioner on the claimant's application for Social Security benefits.

Section 405(g) does not contain a damages remedy.  The Supreme Court has held that, because Congress failed to provide that a cause of action for money damages may be brought under the Social Security Act's "elaborate" statutory scheme for disability benefits, any such cause of action "is unavailable." Schweiker v. Chilicky, 487 U.S. 412, 424, 428-89, 108 S. Ct. 2460, 2463, 2470-71 (1988). *See also* Ostroff v. State of Florida, 554 F. Supp. 347, 352 (M.D. Fla. 1983)(the only monetary relief a claimant may receive in a suit under Section 405(g) is back payment of disability benefits alleged to be wrongfully withheld, and he may not sue for consequential and punitive damages).  Thus, while a claimant unhappy with a benefits determination by the SSA may sue in federal court and seek benefits claimed to be owed him, he may not ask for consequential damages resulting from the SSA's allegedly incorrect benefits decision.

The Supreme Court has made clear that when claims arise under Title II of the Social Security Act, namely, have at their core a challenge to a decision made regarding disability benefits, they may be raised under

Section 405(g) alone, even if they raise constitutional issues and challenges and regardless of the relief sought.  There simply is no other source of federal subject-matter jurisdiction for such claims.  In Weinberger v. Salfi, 422 U.S. 749, 757-62, 95 S. Ct. 2457, 2463-65 (1975), the Supreme Court held that:  Section 405(g) provides the *sole* jurisdictional basis for federal court review of determinations made by the Commissioner with respect to claims for benefits, notwithstanding that the claims may include constitutional challenges to the statutory bases for the Commissioner's decision; general federal question jurisdiction under 28 U.S.C. § 1331 is not available.  *See also* Heckler v. Ringer, 466 U.S. 602, 615, 104 S. Ct. 2013, 2021-22 (1984)(the Salfi holding, and the exclusive jurisdiction of Section 405(g), govern regardless of whether the claim is substantive or procedural and whether the claimant seeks an award of benefits or only declaratory and/or injunctive relief); Matthews v. Eldridge, 424 U.S. 319, 327-28, 96 S. Ct. 893, 899 (1976)(making clear that Salfi's holding applies even when the plaintiff seeks to challenge the procedures by which benefits were denied).  Thus, when a claimant seeks judicial review of the SSA's final benefits decision, the sole basis for federal subject-matter jurisdiction is Section 405(g); he may not bring claims under other federal statutes.

     III. No Basis For Section 405(g) Subject-Matter Jurisdiction Exists In This Case.

    The face of the Complaint, as well as Plaintiff's Opposition and the A.R., readily reveal that Section 405(g) jurisdiction is lacking in this case for two reasons.  Accordingly, dismissal under Rule 12(b)(1)

is appropriate.

First, the ALJ Decision stems from the denial of Plaintiff's application for waiver of his overpayment debt. Plaintiff obtained administrative review of that denial and, as a result of the ALJ Decision, ultimately obtained payment of all DIB amounts owed to him. He admits this fact in his Complaint, in which he alleges that he has received all monies owed him as benefits and the evidence of the overpayment "has been eradicated." (Complaint at 2; *see also* Opposition at 6, 9.) Under Section 405(g), this Court has the power only to affirm, modify, or reverse the Commissioner's decision as to the benefits owed to Plaintiff. As Plaintiff now concedes that he has been paid all benefits owed to him, there is no relief, under Section 405(g), that this Court can afford him with respect to his benefits entitlement. Put otherwise, there is no live case or controversy regarding Plaintiff's entitlement to benefits. As Plaintiff admits he has received all monies owed him and the overpayment debt has been "eradicated," there is no reason for the Court to review the propriety of the ALJ's conclusion that the overpayment debt could not be waived. Thus, judicial review of the ALJ Decision under Section 405(g) is foreclosed.

Second, to the extent that Plaintiff's claim is not about his entitlement to benefits and does not actually seek review of the ALJ Decision as he alleges -- the sole permissible basis for invoking Section 405(g) jurisdiction -- and, instead, is based on Plaintiff's assertions of harm flowing from the reporting of the overpayment debt to consumer reporting agencies, subject-matter jurisdiction is lacking. As

15

noted above, the limited waiver of sovereign immunity effected by Section 405(g) allows this Court to review only "final" decisions of the SSA made after a hearing. The SSA's reporting of the overpayment debt was not a "final" decision, nor was it made after hearing, and it is not subject to either the SSA's administrative review process or the judicial review process. *See* 20 C.F.R. § 404.903(t) ("[d]etermining whether we will refer information about your overpayment to a consumer reporting agency" is not an "initial determination"; it is "not subject to the administrative review process provided by this subpart" and is "not subject to judicial review"). Indeed, both the ALJ and the Appeals Counsel so advised Plaintiff. (A.R. 5, 17.) This Court simply is not permitted to review Plaintiff's complaint about the reporting of his overpayment debt under Section 405(g), as such review does not fall within the scope of that statute and, thus, the waiver of sovereign immunity it effected. Conditions imposed by Congress on waivers of sovereign immunity -- here, the Section 405(g) requirements of a "final" decision made after a hearing -- must be strictly construed. *See, e.g.,* Bowen v. City of New York, 476 U.S. 467, 479, 106 S. Ct. 2022, 2029 (1986); Block v. North Dakota, 461 U.S. 273, 287, 103 S. Ct. 1811, 1819-20 (1983).

Finally, as noted earlier, a claimant pursuing relief under Section 405(g) may not seek or receive consequential and punitive damages. Yet such damages are what Plaintiff seeks by this action, namely, he seeks to recover consequential damages flowing from the erroneous reporting of the overpayment debt to consumer reporting agencies during 2001. Section 405(g) does not provide any jurisdictional foundation for such an action in this Court.

16

The Complaint does not allege any basis for invoking Section 405(g) subject-matter jurisdiction, and Plaintiff's Opposition and the A.R. make clear that no such basis could be stated if leave to amend the Complaint were granted.  Accordingly, under Rule 12(b)(1), the Complaint must be dismissed for lack of subject-matter jurisdiction.  However, as noted above, Plaintiff has pleaded four other possible bases of federal jurisdiction, namely, that the SSA violated his "civil rights" and three federal statutes.  The question then is whether, despite the sovereign immunity doctrine and the Supreme Court's pronouncements regarding the exclusive nature of Section 405(g) jurisdiction for all claims arising under the Act, Plaintiff may pursue his claim under any of these four bases.

IV.  This Court Lacks Subject-Matter Jurisdiction Over The Complaint Under Any Basis.

"Since the United States can be sued only to the extent it has waived its [sovereign] immunity," United States v. Orleans, 425 U.S. 807, 814, 96 S. Ct. 1971, 1976 (1976), the Court must ascertain whether it has waived its immunity, with respect to Plaintiff's claim arising from the alleged violation of his civil rights and the three federal statutes he identifies, by consenting to be sued.  Such consent may be shown only by clear congressional intent expressed through statute. Mitchell, 445 U.S. at 538, 100 S. Ct. at 1351.  Plaintiff bears the burden of showing that there is an unequivocal waiver of sovereign immunity pursuant to the non-Section 405(g) provisions that he cites, which would allow this Court to hear his claim under those provisions. West v. Fed. Aviation Admin., 830 F.2d 1044, 1046 (9th Cir. 1987); Baker

17

1  <u>v. United States</u>, 817 F.2d 560, 562 (9th Cir. 1987).  Thus, given the

2  lack of Section 405(g) jurisdiction for this case, Plaintiff bears the

3  burden of identifying one or more statutes, or other appropriate basis,

4  giving rise to subject-matter jurisdiction over his claim against the

5  Commissioner and by which the United States has waived its sovereign

6  immunity.

7

8       In both the Complaint and his Opposition, Plaintiff alleges that

9  there are three statutory bases for this Court's assertion of subject-

10  matter jurisdiction over his claims:  the Fair Debt Collection Practices

11  Act, 15 U.S.C. § 1691-92; the Fair Credit Reporting Act, 15 U.S.C. §

12  1681; and the Privacy Act, 5 U.S.C. § 552a.  (Complaint at 3; Opposition

13  at 15-20.)  Additionally, in the Complaint, Plaintiff alleges that the

14  Commissioner violated his "civil rights" through the asserted improper

15  reporting of the overpayment debt in 2001.  (Complaint at 2.)  The Court

16  finds that none of these asserted jurisdictional bases give rise to

17  subject-matter jurisdiction in this case, for the following reasons:

18

19  <u>*Bivens*</u> *"Civil Rights" Jurisdiction:*

20

21       In <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>,

22  402 U.S. 388, 396-97, 91 S. Ct. 1999, 2005 (1971), the Supreme Court

23  held that, in certain circumstances, an aggrieved party may sue a

24  federal employee based on the employee's violation of the party's

25  constitutional rights.  <u>Bivens</u>, thus, provides a form of civil rights

26  remedy for claims against federal employees.  A <u>Bivens</u> claim, however,

27  may not be brought against the United States itself or against any of

28  its agencies or any of its officers, agents, or employees in their

18

official capacities.  <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 484-86, 114 S. Ct. 996, 1005-06 (1994); <u>Vaccaro v. Dobre</u>, 81 F.3d 854, 857 (9th Cir. 1996); <u>Cato v. United States</u>, 70 F.3d 1103, 1110 (9th Cir. 1995). Rather, a <u>Bivens</u> claim "'can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity.'" <u>Vaccaro</u>, 81 F.3d at 857 (citation omitted).

There is no subject-matter jurisdiction here, pursuant to <u>Bivens</u>, over Defendant as sued in her official capacity.  *See* <u>Mayben v. Barnes</u>, 290 F. Supp. 2d 1169, 1173 (E.D. Cal. 2003)("a *Bivens* action cannot be brought against a federal employee in his or her official capacity because this would be deemed an action against the United States"). There could be <u>Bivens</u> federal question jurisdiction for this action *only* to the extent that Plaintiff has sued the Commissioner in her individual capacity.  However, as discussed earlier, the Court has concluded that the Complaint cannot be fairly read to plead an individual capacity suit against Defendant.  In any event, even if it could be so read, or even if Plaintiff were to be allowed leave to plead an individual capacity claim against Defendant, no <u>Bivens</u> jurisdiction would exist.

In <u>Schweiker v. Chilicky</u>, *supra*, the Supreme Court held that persons who claimed they were denied social security benefits based on the allegedly unconstitutional actions of federal officials were precluded from bringing a <u>Bivens</u> action.  The <u>Schweiker</u> plaintiffs claimed they had been deprived of due process as a result of policymaking decisions by the SSA Commissioner and in connection with the handling of their benefits claims.  The Supreme Court concluded

19

that, based on the "elaborate remedial scheme devised by Congress" through the Social Security Act, no Bivens remedy could lie for the alleged due process violations.  487 U.S. 412, 414, 108 S. Ct. 2460, 2463 (1988).

In sum, this Court cannot exercise Bivens-based jurisdiction in this case under the present Complaint or any amended version.

*Fair Credit Reporting Act And Fair Debt Collection Practice Act Jurisdiction:*

Relying on 15 U.S.C. §§ 1681 and 1691-92, Plaintiff asserts that he may sue the Commissioner under the Fair Credit Reporting Act and Fair Debt Collection Practice Act.  (Complaint at 3.)  His assertion fails for several reasons.

First, Plaintiff has not shown that the United States has consented to be sued under any of these provisions.  Plaintiff, thus, has not met his burden of establishing that the otherwise-applicable sovereign immunity doctrine does not bar him from bringing his present claim against the Commissioner under these statutes.  Therefore, under Rule 12(b)(1), dismissal is required.

Second, and in any event, even if there was no sovereign immunity issue, Rule 12(b)(6) would require dismissal, because Plaintiff has not stated, and cannot state, any cognizable claim under these statutes. These statutes are part of Chapter 41 of Title 15 of the United States Code, relating to consumer credit protection.  Section 1681 is the

20

initial statute in Subchapter III, which governs consumer reporting agencies and establishes requirements with which they must comply in the furnishing of credit reports.   15 U.S.C. § 1681 *et seq.*   The SSA, indisputably, is not a "consumer reporting agency" within the meaning of the Fair Credit Reporting Act.   *See* 15 U.S.C. § 1681a(f).   In his Opposition (at 18-19), Plaintiff relies on Sections 1681a(b), 1681n(a), and 1681p of this Act as the bases for subject-matter jurisdiction, but his reliance is misplaced.   Those provisions relate only to the potential civil liability of persons who have violated the Act's statutory provisions relating to the furnishing of credit reports and the disclosure and use of information in credit reports.   Plaintiff does not claim that the SSA improperly obtained or disclosed information it obtained from Plaintiff's credit reports.[4]   Finally, Plaintiff's reliance in his Opposition (at 19-20) on Section 1681s-2(a), which relates to furnishers of credit information, is equally misplaced, as that statute is enforceable "exclusively" by federal and state governmental agencies and does not create a private right of action.   15 U.S.C. § 1681s-2(d); *see also* Pirouzian v. SLM Corp., 396 F. Supp. 2d 1124, 1126-27 (S.D. Cal. 2005); Stafford v. Cross-Country Bank, 262 F. Supp. 2d 776, 782-83 (W.D. Ky. 2003).[5]   In sum, Plaintiff cannot state a basis for

---

[4]   Plaintiff also relies on what he labels as "15 U.S.C. Section 1680o." (Opposition at 18.)  However, there is no Section 1680o or 1680 in Title 15.   To the extent that Plaintiff intended a reference to Section 1681o, that reference fails for the same reason that his reliance on the other cited provisions fails, namely, because the SSA is not a consumer reporting agency and is not alleged to have wrongly obtained or disclosed information from a credit report.

[5]   In contrast, Section 1681s-2(b) does provide a private cause of action against furnishers of credit information, but only if the furnisher has received notice of a credit dispute from a credit reporting agency; notice from the debtor is not enough to establish a cause of action under this statute.   Stafford, 262 F. Supp. 2d at 783-

jurisdiction or a cognizable claim against the Commissioner under the Fair Credit Reporting Act.

Plaintiff's efforts to establish jurisdiction and a claim under the Fair Debt Collection Practices Act fail as well. Plaintiff's reliance on Section 1691 is frivolous. That statute prohibits creditors from discriminating in credit transactions on the basis of race, sex, etc., and provides victims of such discrimination with a remedy. Unquestionably, for purposes of Plaintiff's present claim, the SSA is not a creditor who discriminated against Plaintiff based on unlawful reasons. The statutes Plaintiff cites commencing at Section 1692 are designed to prohibit and provide a remedy for "abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). However, the SSA is not a "debt collector" within the meaning of this Act, as it is not a "business *the principal purpose of which is the collection of any debts*, and who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *to another*." 15 U.S.C. § 1692a(6) (emphasis added). The Fair Debt Collection Practices Act governs collection agencies which collect debts on behalf of others, not entities which are owed a debt and take steps to collect it. *See, e.g.,* Stafford, 262 F. Supp. 2d at 794; Bleich v. Revenue Maximization Group, Inc., 239 F. Supp. 2d 262, 264 (E.D.N.Y. 2002). Sections 1692d, 1692e, and 1692k (invoked by Plaintiff in his Opposition at 17-18) do not establish subject-matter jurisdiction or provide the basis on which a cognizable claim may be

84. Presumably, as no such facts are alleged here, this is why Plaintiff does not rely on this statutory provision to establish jurisdiction and a claim against the Commissioner.

1  asserted against the Commissioner, as those provisions apply only to

2  conduct by collection agencies. Accordingly, no subject-matter

3  jurisdiction or cognizable claim can be found based on the Fair Debt

4  Collection Practices Act.[6]

5

6  *Privacy Act Jurisdiction:*

7

8      Plaintiff asserts that this Court has jurisdiction to hear his

9  claim under the Privacy Act, 5 U.S.C. § 552a. (Complaint at 3;

10 Opposition at 15-16.) The Privacy Act "was designed to protect the

11 personal privacy of individuals who are the subject of government

12 records." Wright & Koch, 33 <u>Federal Practice & Procedure: Judicial</u>

13

14     [6]   In his Opposition, Plaintiff cites numerous provisions of the
SSA's Program and Operations Manual System (POMS) and Hearing, Appeals
and Litigation Law Manual (HALLEX), arguing that they establish that the
15 SSA:  violated its procedures and policies in connection with its
handling of his overpayment debt; and is subject to liability under the
16 Fair Credit Reporting Act and the Fair Debt Collection Practices Act,
because certain POMS provisions mention these two acts. Whether or not
17 the handling of Plaintiff's overpayment debt was wholly consistent with
POMS and/or HALLEX and/or whether or not these provisions mention the
18 above two statutes is beside the point here. POMS and HALLEX are
internal procedural manuals; neither has the force and effect of law and
19 neither imposes judicially enforceable duties. <u>Lowry v. Barnhart</u>, 329
F.3d 1019, 1023 (9th Cir. 2003); <u>Moore v. Apfel</u>, 216 F.3d 864, 868-69
20 (9th Cir. 2000). Any inconsistency between the SSA's conduct in
Plaintiff's case and its internal policies does not give rise to
21 subject-matter jurisdiction under the Fair Credit Reporting Act and the
Fair Debt Collection Practices Act where none otherwise exists. Such an
22 inconsistence does not result in a waiver of sovereign immunity.

23     In his Opposition, Plaintiff complains that the SSA has
violated various HALLEX provisions by not obtaining in 2001, and then
24 including in the A.R. in this case, all the documents generated during
2001 regarding his inaccurate credit reports (such as all communications
25 from Congressman Cox's Office). Under Section 405(g), the certified
administrative record is to include "the evidence upon which the
26 findings and decision complained of are based." The only decision
complained of, for Section 405(g) purposes, is the ALJ Decision, which
27 resolved Plaintiff's request to waive the overpayment debt. The
documents Plaintiff complains are missing are irrelevant to that
28 decision; hence, they were not required to be included in the A.R..

1    Review, § 8446 (2006).  The Act regulates agencies that maintain records
2    about individuals in four primary ways, including: establishing
3    requirements for the collection and compilation of information; allowing
4    individuals to see their agency files; providing for the amendment and
5    correction of agency files upon requests by individuals; and limiting
6    the degree to which such files may be disseminated outside the agency.
7    *Id.*  Unlike the two above-noted credit-related acts on which Plaintiff
8    relies, the Privacy Act does contain a sovereign immunity waiver by
9    permitting civil actions against government agencies, and establishes
10   jurisdiction in the federal district courts.  5 U.S.C. § 552a(g); *see*
11   *also* Harrell v. Fleming, 285 F.3d 1292, 1293 (10th Cir. 2002).

12

13         Petitioner's Complaint does not explain how the Commissioner's
14   alleged conduct equates to a violation of the Privacy Act.  It appears,
15   based on his Opposition, that Plaintiff believes the SSA violated the
16   Privacy Act by not ensuring that the two consumer reporting agencies
17   corrected the information set forth in their credit reports for
18   Plaintiff.  Plaintiff indicates he is relying on subparts (d), (e), (f),
19   and (g) of Section 552a to support his contention that he may pursue a
20   Privacy Act claim against the SSA.  (Opposition at 16-17.)[7]

21

22         Section 552a(d) allows an individual to challenge the accuracy of

23   _____

24         [7]  Plaintiff indicates that he also is relying on subparts (i)(1)
25   and (p) of Section 552a (Opposition at 16-17), but both are patently
     inapplicable.  Section 552a(i) provides criminal penalties for improper
26   disclosure of agency records in violation of the Privacy Act.  This,
     however, is a civil action.  Subpart (p) applies only to records used in
27   "matching programs."  Plaintiff's allegations do not implicate that
     provision by its terms or under the Act's definition of "matching
28   program" set forth in Section 552a(a)(8) and, indeed, expressly preclude
     its applicability (*see* subpart (a)(8)(B)(iv)).

                                     24

an agency record and provides related procedures.  Section 552a(e) sets certain requirements that agencies must follow in maintaining their own system of records, including making reasonable efforts to ensure that the records about an individual are accurate and complete before disseminating them to another person or using them to make a decision about the individual.  Section 552a(f) requires agencies to promulgate rules in accordance with Privacy Act requirements.

Section 552a(g) provides a civil remedy for certain violations of the Privacy Act requirements.  With respect to Privacy Act claims based on an alleged failure to amend an agency record as requested by the individual or to permit him to review a record upon request, the civil remedy is to require compliance with the Act, namely, to order production of the record and/or its amendment; damages are not an available remedy.  5 U.S.C. § 552a(2) and (3).  When, instead, a Privacy Act claim is based on the fact that a failure to maintain a record accurately resulted in an adverse determination concerning the individual, actual damages are available, but only if the agency acted intentionally and willfully.  5 U.S.C. § 552a(4).  In any civil suit under the Privacy Act, the federal lawsuit must be filed within two years of the date on which the cause of action arises, unless the agency has materially and willfully misrepresented information required to be disclosed to the individual under Section 552a, and the misrepresented information is material to establishing the agency's liability.  In the latter case, the two-year period runs from the individual's discovery of the misrepresentation.

Apart from Plaintiff's failure to explain how the Privacy Act

25

applies to his claim and gives rise to subject-matter jurisdiction, it is readily apparent that neither a cognizable claim nor jurisdiction exists based on Plaintiff's mere invocation of Section 552a. The gravamen of Plaintiff's claim is that third parties -- the two credit agencies -- had incorrect information in their records regarding the status of the overpayment debt. But the Privacy Act governs only an agency's maintenance of *its own* records. Plaintiff appears to contend that the SSA's records in 2001 and years earlier -- which were the basis for reporting his overpayment debt to credit agencies and for the referral of the debt to the TOP program for a tax refund offset -- were inaccurate, because several years later, the ALJ concluded that Plaintiff's 1991 application for SSI should be deemed a constructive application for DIB pursuant to the error doctrine for reopening a final determination. Plaintiff's argument overlooks the fact that, at the time the SSA acted, its records were accurate given the situation before it: Plaintiff had never challenged the overpayment assessment and the payments he sought and received under his 1991 application were SSI payments, which could not be offset against his overpayment debt. The ALJ's later determination that Plaintiff's 1991 application should be construed constructively as one for DIB, in order for the ALJ to have a legal basis for reopening the overpayment issue, does not convert SSA records that were accurate at the times in question into inaccurate records on an after-the-fact basis.

Moreover, the SSA was entitled to report to the credit agencies the fact of Plaintiff's overpayment debt, both factually and legally. The ALJ never found Plaintiff did not owe an overpayment debt; the effect of the ALJ decision simply was to reduce the amount of that debt on a

retrospective basis.    The fact that, several years later, the debt effectively was netted out due to DIB payments found owing to Plaintiff pursuant to the ALJ Decision does not negate the fact that, as of and throughout 2001, an overpayment debt validly existed in the SSA's records that properly could be reported to consumer reporting agencies.[8] That those third party agencies, in turn, inaccurately reported its status at various times in 2001 does not mean that the SSA violated the Privacy Act.[9]

Finally, and critically, the Court notes that, even if amendment were permitted, Plaintiff would be time-barred from pursuing a Privacy Act claim.   As noted above, the Privacy Act requires that a plaintiff sue within two years after his cause of action has arisen.  Based on his own allegations, Plaintiff's cause of action arose during 2001, when the inaccurate credit reports, which he states stopped in November 2001, allegedly ruined his credit and his real estate development plans, and

---

[8]    42 U.S.C. § 404(f) provided in 2001 (and continues to provide) that the Commissioner may use the debt collection practices authorized by various other federal statutes, including 31 U.S.C. §§ 3711 and 3716, which, in turn, allow federal agencies to disclose information to credit agencies when collecting on a debt and to participate in the TOP program.     The SSA's regulations, as of 2001, also allowed the Commissioner to report overpayment debts to consumer reporting agencies and to refer an overpayment debt to the Treasury Department for a tax refund offset.   *See* 20 C.F.R. §§ 404.520, 404.527, 422.305, and 422.310 (as of December 31, 2000).

[9]    It is significant that Plaintiff seeks to invoke, and relies on for jurisdiction, the provisions of the Privacy Act relating to disclosure and amendment of agency records upon an individual's request, rather than the provisions relating to improper disclosure of agency records to third parties.   The provisions on which Plaintiff relies do not permit a litigant to seek damages and, instead, allow only for a court order directing that records be disclosed to the individual and/or amended as he requests.  5 U.S.C. § 552a(g)(2) and (3).  Plaintiff does not seek to force the SSA to disclose its agency records to him, nor does he seek to have those agency records amended.   Rather, he wants to receive monetary damages.

27

caused him to incur $12,000 in attorney's fees and other damages.  As early as June and October of 2001, Plaintiff complained to the SSA that the credit reporting errors had caused his credit rating to drop and occasioned damages in excess of $100,000.  (A.R. 33.)  At the October 2002 hearing before the ALJ, Plaintiff described the financial harm he incurred allegedly based on the SSA's errors and indicated his intent to pursue damages in a court case against the SSA.  (A.R. 163-66.)  Plaintiff did not file his Complaint, however, until May 5, 2005, well over two years later.  As Plaintiff's asserted Privacy Act claim would be untimely even if it could be amended to state a cognizable cause of action, Rule 12(b)(6) warrants dismissal.  *See* Harrell, 285 F.3d at 1293 ("The statute of limitations [set forth in 5 U.S.C. § 552a(g)(5)] qualifies the waiver of sovereign immunity and 'constitutes a limitation on subject matter jurisdiction'"; citation omitted).

For all of the foregoing reasons, the Court concludes that none of the bases urged by Plaintiff support subject-matter jurisdiction over his claim.  As it is Plaintiff's burden to establish that subject-matter jurisdiction exists, and he has failed to do so, dismissal is required.

V.   Leave To Amend Is Not Warranted.

A *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.  Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 628 (9th Cir. 1988); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).  Nevertheless, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint

28

can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely."  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1129 (9th Cir. 2000).  Where further amendment would be futile, the Court may exercise its discretion and deny leave to amend.  *Id.*

Here, the defects of Plaintiff's claim against the Commissioner, as identified above, are fundamental -- *to wit*, a lack of subject-matter jurisdiction and the bar of sovereign immunity, as well as untimeliness of any arguable Privacy Act claim -- and cannot be rectified by amendment.  Granting leave to amend, thus, would be a futile exercise.

The Court is mindful that Plaintiff is proceeding on a *pro se* basis and has construed his allegations liberally as a result.  The Court also is sympathetic to Plaintiff's situation.  The Court's role here, however, is to interpret and apply the law.  No matter how liberal a construction is given Plaintiff's assertions, jurisdiction cannot be found when it does not, and cannot, exist.  It is clear that dismissal is required under Rule 12(b)(1) and (b)(6).  It is equally evident that curative amendment is not possible, and granting leave to amend would be a meaningless and hollow gesture.  Accordingly, the Court concludes that leave to amend should not be granted and this action should be dismissed with prejudice.

///

///

///

///

///

///

29

For the foregoing reasons, IT IS ORDERED that the Motion is GRANTED pursuant to Rule 12(b)(1) and (b)(6), and that Judgment shall be entered dismissing this action with prejudice.

DATED: July 26, 2006.

/s/
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE
